UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DANIEL PATRICK SHEEHAN,

                      Petitioner,

  -against-

UNITED STATES OF AMERICA,

                      Respondent
--------------------------------------------------------X

**MEMORANDUM & ORDER**
16-CV-6385
13-CR-186

**APPEARANCES:**

**For Petitioner:**
Daniel Patrick Sheehan
#81730-53
FCI Allenwood (medium)
P.O. Box 2000
White Deer, PA 17887

**For Respondent:**
Richard P. Donoghue
Interim United States Attorney, Eastern District of New York
610 Federal Plaza
Central Islip, New York  11722
By: Lara T. Gatz, AUSA

**HURLEY, Senior District Judge:**

Petitioner Daniel Patrick Sheehan ("Defendant" or "Sheehan") moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Sheehan contends he received ineffective assistance from both his trial and appellate counsel in violation of his Sixth Amendment right.

**I.    BACKGROUND**

By indictment filed on March 20, 2013, the defendant was charged in Count One with a "Hobbs Act Extortion" in that he allegedly "demanded money from the Home Depot Store in Huntington Station, New York via threatening letters and telephone calls to the store's manager"

in violation of 18 U.S.C. § 1951, and, under Count Two, with the "Use of a Destructive Device to Commit [the] Extortion" charged in Count One in violation of 18 U.S.C. § 924(c)(1)(B)(ii).

The case was tried before a jury over several days beginning on June 11, 2013. During defendant's opening statement, he acknowledged his guilt as to Count One consistent with what he told members of law enforcement upon his arrest. But he denied the allegations in Count Two upon the ground that the "pipe bomb" he secreted in the store was not functional and thus the device was not a "destructive device" as defined by statute.[1] The jury returned a verdict of guilty as to both counts. By Memorandum & Order, dated July 11, 2014, the Court denied defendant's motions pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, rejecting the contentions that he was entitled to acquittal or a new trial on the grounds that the "pipe bomb" was not a destructive device, he was denied a fair trial, and the jury charge was flawed. Sheehan was sentenced to a term of imprisonment of 30 years on Count Two (the mandatory minimum) and a consecutive term of imprisonment of one month on Count One.

On appeal, Sheehan continued to challenge his conviction under Count Two maintaining that the "pipe bomb" was not a "destructive device, that the prosecutor's summation deprived him of a fair trial, and that the jury instructions were erroneous. On September 23, 2016, the Second Circuit rejected defendant's arguments and affirmed his conviction.

## II. DEFENDANT'S CONTENTIONS

In his petition, defendant asserts that his conviction on Count Two should be vacated as trial counsel rendered ineffective assistance in that (1) he failed to view discovery with defendant; (2) his loyalty was with the prosecution; (3) he "barred [defendant] from discussing Media lies while on the stand to the point [defendant] did not take the stand at all;" (4) he

---

[1] The trial testimony is described in the Court's Memorandum & Order, dated July 11, 2014, denying defendant's Rule 29 and 33 motions and incorporated herein by reference.

conceded defendant's guilt as to the extortion count when Sheehan "only attempted extortion;" (5) he failed to follow-up when defendant's PSR was not done for six months; (6) he moved defendant to a prison called GEO to make it easier on the US Marshals; and (7) he failed to make any pretrial motions or conduct any investigation. (DE 75 at 2-14.) As to "appellate" counsel, he claims that the counsel who represented him at sentencing and was supposed to represent him on appeal (1) failed to argue that defendant was entitled to a 3 point reduction for his crime being attempted extortion and not extortion; (2) would not email defendant and blocked his phone calls, and (3) farmed him out to co-counsel without consulting him. Further, that co-counsel never met him or discussed the appeals strategy, waived oral argument, and referred to him as delusional on appeal. (*Id*. at 15-19.) Lastly, defendant argues that the Supreme Court ruling in *Johnson v. United States*, 135 S. Ct. 2551 (2015) "eliminates attempted extortion as a violent crime worthy of supporting a 924c as a predicate offense." (*Id*. at 19-21.)

### III. DISCUSSION

#### A. Legal Standard - 2255 Petitions

A federal prisoner may file a petition in the sentencing court "to vacate, set aside, or correct" a conviction or sentence that was imposed in violation of the laws of the United States." 28 U.S.C. § 2255(a). A federal habeas petitioner bears the burden of proof by a preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 30 (2d Cir. 2000).

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct attack." *Yick Man Mui v. United States*, 614 F.3d 40, 53 (2d Cir. 2010) (internal quotation marks omitted). One such rule, "the so-called mandate rule bars relitigation of issues already decided on direct appeal,"

including both "matters expressly decided by the appellate court" and "issues impliedly resolved by the appellate court's mandate." *Id*. at 53-55.

### B.   Legal Standard - Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees the right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). *Strickland* announced the now-familiar two-part test for determining whether an attorney's performance is constitutionally adequate. To establish an ineffective assistance of counsel claim, a petitioner must show that (1) the attorney's performance "fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694.

In analyzing the first prong, courts are to make every effort to "eliminate the distorting effects of hindsight," "evaluat[ing] the conduct from counsel's perspective at the time." *Id*. at 689. The Supreme Court recognized, the "difficulties inherent in making [this] evaluation" and therefore instructed courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir. 2002). Courts are to bear in mind that "[t]here are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689 (internal citation omitted). Thus, under the first prong, "we ask whether counsel's performance was so deficient that, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Gonzalez v. United States*, 722 F.3d

118, 130 (2d Cir. 2013) (internal quotation marks omitted); *accord Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.") (internal quotation marks omitted). Second guessing the tactical and strategic choices made by counsel is seldom appropriate. "Courts in this district have routinely refused to find ineffective assistance of counsel given the wide range of conduct considered reasonable." *Occhione v. Carpa*, – F. Supp. 3d –, 2015 WL 3879534 (E.D.N.Y. 2015) (citing *Melendez v. Heath*, 2014 WL 2440499, at *5 (E.D.N.Y. May 30, 2014); *Gordon v. Bradt*, 2014 WL 1237370, at *8 (E.D.N.Y. Mar. 25, 2014); *Garcia v. Smith*, 2014 WL 905544, at *20–21 (E.D.N.Y. Mar. 7, 2014); *Johnson v. Taylor*, 2010 WL 2735770, at *4–6 (E.D.N.Y. July 8, 2010).) "If counsel was actively engaged . . . in various aspects of a defense, ineffective assistance is rarely found." *Occhione*, 2015 WL 3879534 at *15; *see Caimite v. Fischer*, 2009 WL 236917, at *5–6 (E.D.N.Y. Feb. 2, 2009) (trial counsel that engaged in pretrial discovery, effectively cross-examined witnesses, made cogent opening, appropriate objections and motions during trial, and made appropriate charge requests and sound closing arguments considered effective). Moreover, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Courts should not "second-guess reasonable professional judgments and impose . . . a duty to raise every 'colorable' claim suggested by a client." *Jones v. Barnes*, 463 U.S. 745, 754 (1983).

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Thus, the second prong of Strickland requires Petitioner to show that his

attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694. More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id*. at 693. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial." *Id*. at 687.

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court in *Strickland* specifically noted that the federal district courts need not address both components. The relevant excerpt from that decision reads:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

Since the two Strickland requirements are conjunctively stated, the failure to establish either is fatal.

Having enunciated the standards for 2255 petitions and claims for ineffective assistance of counsel, the Court will address Sheehan's claims as to trial counsel and then proceed to his claims regarding appellate counsel.

C. The Claims Regarding Trial Counsel

1. Extortion vs. Attempted Extortion

The first issue to be addressed is the assertion that counsel was ineffective because he "plead" defendant guilty of extortion when he only attempted extortion as he "abandoned his plan before obtaining property from [the Home Depot]." (DE 89 at p. 13. In support of this argument he cites to 18 U.S.C. § 1951(b)(2) which defines extortion to mean "the obtaining of property from an another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

Count one of the indictment, entitled "Hobbs Act Extortion" read as follows:

> 1. On or about and between May 1, 2012 and November 7, 2012, within the Eastern District of New York and elsewhere, the defendant DANIEL PATRICK SHEEHAN did knowingly and intentionally attempt to obstruct, delay and affect commerce, by extortion, in that SHEEHAN demanded money from the Home Depot store in Huntington Station, New York, via threatening letters and telephone calls to the store's manager.
> (Title 8 United States Code, Sections 1951 and 3551 et seq.)

(DE 11 at ¶1 (emphasis added).) It was to this Count that defense counsel, in his opening statement, acknowledged defendant's guilt.

Given that defendant confessed to sending the relevant notes to the Home Depot (viz. Gov't's Ex. 36, 37), the decision to admit Count One was a sound trial strategy to focus the case on whether the device at issue was a "destructive device." Moreover, the courts have held that 18 U.S.C. § 1951 covers not only extortion but also attempted extortion. *See United States v. Tropiano*, 418 F.2d 1069 (2d Cir. 1969) (18 U.S.C. §1951 embraces an attempt to interfere with commerce by extortion even though attempt failed because extortion was uncompleted); *accord United States v. Rindone*, 631 F.2d 491 (7th Cir. 1980 (18 U.S.C. §1951 proscribes not only obstructing or affecting commerce through extortion but also attempting to do so; violation is

complete when one attempts to induce a person engaged in interstate commerce to part with property); *United States v. Carpenter*, 611 F.3d 113 (5th Cir. 1980) (18 U.S.C. §1951 may be used to prosecute attempted bank extortions); *United States v. Frazier*, 560 F.2d 884 (8th Cir. 1977) (upholding conviction under 18 U.S.C. §1951 when defendant attempted to induce his victim to part with property); *United States v. Rosa*, 560 F.2d 149 (3d Cir. 1977) (18 U.S.C. §1951 proscribes attempted extortion in attempt to obstruct commerce); *United States v. Quinn*, 514 F.2d 1250 (5th Cir. 1975) (section forbids attempted extortion as well as actual extortion); *cf. United States v. Del Carmen Ramirez*, 823 F.2d 1 (1st Cir. 1987) (defendant could be convicted of attempting to interfere with commerce by robbery given evidence that he and other planned to rob truck carrying bank's funds, they cased the bank, stole a car and arrived armed at the bank shortly before the truck was due to arrive but changed their plans when they learned the police were waiting for them). Given this construction, trial counsel's concession of defendant's guilt on Count I of the indictment neither "fell below an objective standard of reasonableness," nor prejudiced the defense.

2. Failure to Investigate and Make Pre-Trial Motions

Defendant maintains that trial counsel did not "investigate the facts of this case at all, despite Sheehan's alerts to [The Home Depot] surveillance possibly showing the disarming process and missing warrants showing 4th amendment violation." (DE 89 at 6.) He also asserts that "[t[he entire pretrial discovery consisted only of pipe fragments." (Id. at 4.)

"[T]o successfully assert ineffective assistance of counsel claim based on a failure to investigate, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." *United States v. Peterson*, 896 F. Supp. 2d 305, 316 (S.D.N.Y. 2012); *accord Matura v. United States*, 875 F. Supp. 235,

237 (S.D.N.Y. 1995) ("[petitioner's bald assertions that counsel should have conducted a more thorough pre-trial investigation fails to overcome the presumption that counsel acted reasonably.").

Addressing first the allegation regarding a surveillance video of the disarming process, as the government points out, there is no such surveillance video and even if such a video did exist, defendant fails to set forth how the video would prove that the device would not have exploded if dropped from a shelf while in a box. (DE 87 at 5.) As no such video existed, any failure to investigate its existence cannot have caused prejudice.

As to the alleged missing warrant, although there is a passing reference to a "missing warrant to video entire town of Huntington," (DE 75 at 7), no specifics are provided in the petition.[2] In the absence of any specifics, the presumption that counsel acted reasonably in not moving to suppress is not overcome. *See Castellano v. United States*, 795 F. Supp. 2d 272, 279 (S.D.N.Y. 2011) (rejecting ineffective assistance claim where petitioner failed to identify alternative evidence that, if offered, "would have undermined confidence in the jury verdict"); *Abraham v. Lee*, 2014 WL 3630876, at *11 (S.D.N.Y. July 22, 2014) (rejecting ineffective assistance claim as vague and conclusory where petitioner's claim for failure to investigate was "only a blanket assertion").

---

[2] The Court notes that in a pro se motion to vacate his conviction filed on September 8, 2014, defendant argued that "there was no warrant to view the dashboard camera video of the defendant's vehicle that lead to the defendant being a suspect and no probable cause to validate the depth or scope of the intrusion and violation of defendant's, along with countless other citizens, 4th amendment Constitutional right of expectation of privacy was grossly violated." (DE 52 at 1-2.) To the extent the "missing warrant" reference in this 2255 motion is synonymous with the foregoing, a motion to suppress would not have been successful as there was no legitimate expectation of privacy as to actions occurring in the public view. *See United States v. Hayes*, 551 F.3d 138, 143 (2d Cir. 2008) (Fourth Amendment applies only to spaces in which an individual has a reasonable expectation of privacy); *cf. United States v. Mazzara*, 2017 WL 4862793 (S.D.N.Y. Oct. 27, 2017) (Fourth Amendment not violated by 21 month surveillance of defendant's residence through the installation of video camera on utility pole across therefrom as the camera observed and recorded only those actions that were exposed to the public).

Finally, the claim that counsel did not conduct a pre-trial investigation is underwhelming when juxtaposed to trial counsel's performance during the trial, including his cross-examination of government witnesses and his presentation and examination of an expert on defendant's behalf.

        3.        <u>Divided Loyalty</u>

As examples of what he claims was trial counsel's divided loyalty, Sheehan asserts that (1) counsel brought to the Court's attention that a selected date was very close to the speedy trial deadline; (2) counsel said he, the prosecutor, and prior defense counsel "'came up' with [defendant's] charges and plea offer"; (3) counsel lured him to the courthouse to view discovery and then "ambushed" him by having FBI agents and the prosecutor berate him to take a plea; and (4) failed to have defendant view all the discovery.

Counsel's statement to the Court that a selected date was close to the speedy trial deadline does not, in this Court's view, support a claim of divided loyalty or ineffective assistance. Rather, it was an attorney discharging his duty as an officer of the court.

The claim that trial counsel participated in "c[oming]-up" with the charges lodged against Sheehan is belied by the record in this case as he was not appointed until after the indictment was filed. A complaint against Sheehan was filed on October 11, 2012 alleging that Defendant "knowingly and intentionally attempt[ed] to obstruct, delay and affect commerce . . . . by extortion . . ."[citing 18 U.S.C. §1951 ) and "did knowingly and intentionally use and carry a destructive device, to wit: a bomb during and in relation to a crime of violence, to wit: the attempted extortion of Home Depot (citing18 U.S.C. § 924(c)(1)(B)(ii))." (DE 1.) That same date he was arraigned, represented by Federal Defenders. An indictment was thereafter filed on March 20, 2013 charging defendant with violations of 18 U.S.C. 1951, 924(c)(1)(B)(II) and

844(h)(1) (DE 11.) At the arraignment on that indictment held on April 10, 2013, Sheehan requested that new defense counsel be appointed. Two days later, viz. April 12, 2013, trial counsel, Mr. Lato, was appointed counsel and continued to represent defendant through the trial. As far as the claim that trial counsel "came-up" with the plea offer, it provides no basis for relief. Engaging in plea negotiations is standard practice and can inure to the benefit of a defendant.

As to the "ambush" and "berating" claim, even assuming the truth of this assertion, there is no prejudice as Sheehan did not accept the plea offer. Similarly that counsel may have told Defendant that his presentence report ("PSR") was not completed for six months because it "fell through the cracks" (DE 75 at 16.) that assertion provides no basis for relief. The Sixth Amendment's speedy trial guarantee does not apply to the sentencing phase of a criminal prosecution, *see Betterman v. Montana*, -- U.S. --, 136 S. Ct. 1609 (2016). Also, defendant faced a mandatory minimum sentence of thirty years so the delay in the PSR did not result in unwarranted incarceration or otherwise adversely effect Sheehan. As for the claim that counsel had defendant "moved to a prison called GEO to make it easier for the Us Marshalls" (*id*.), counsel has no say in determining where a defendant is housed.

The last assertion is that counsel failed to have defendant view all the evidence. According to Sheehan, "after seeing everything at trial, I could have provided insight into evidence that was flat out wrong. Such as bags of little yellow and red wire purchased at a yard sale. These improperly included Household wire caps were the only evidence to back the prosecution's claims that the defendant 'had additional bomb making material in his home for future devices'. . . ." (DE 75 at 3.) Attached to defendant's motion are a series of e-mails which demonstrate defendant's reluctance to view discovery. For example, he wrote "I don't see the need to view discovery, it can only cause me to doubt, I have no choice but to go to trial

regardless of what discovery states . . . ." (DE 75-1 at 2.) In response, counsel wrote: "Perhaps nothing 'can be accomplished by [your] seeing the discovery.' Nothing will definitely be accomplished if you hang out in the MDC." (Id. at 1.) Given defendant's apparent reluctance to participate in viewing discovery when coupled with the absence of any demonstration of prejudice, this claim provides no basis for relief.

    4.        <u>Failure to Make Certain Arguments</u>

Sheehan asserts that trial counsel abandoned the agreed upon defense, which was to focus the jury's attention on the statutory definition of a "destructive device" and instead pursued a "bucket of water defense." The trial record does not support this assertion. The principal focus of the defense was whether the device that Sheehan admittedly left at the Home Depot was "a destructive device." (*See, e.g.,* Tr. 464-66.) Indeed, that was the purpose of the expert testimony proffered by the defense. While Sheehan asserts that "it is undisputed that Sheehan designed his device not to work, told the victim of its inert nature via extortion note and not to fear it" (DE 75 at 10), that was in fact disputed. Moreover, Sheehan's his subjective intent was irrelevant to whether the subject device met the statutory definition of a destructive device. *See United States v. Sheehan*, 838 F.3d 123-25 (explosive bomb includes a device that is missing a component for detonation in intended manner but that is capable of detonating). The government's position, accepted by the jury, and affirmed on appeal, was that viewed objectively the subject device was designed for use as a weapon.

To the extent Sheehan is complaining about the "bucket of water" cross-examination questions, it provides no basis for relief. *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (holding that trial lawyer was effective, despite defendant's claim that lawyer failed to thoroughly impeach prosecution witness); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)

("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature."). "[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, ... and [a court] should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (citing *Eisen*, 974 F.2d at 265).

     5.     Failure to Object to Prosecutor's Summation

According to Sheehan, trial counsel was ineffective because he failed to object to alleged inappropriate statements by the prosecutor during summation. This claim is barred by the mandate rule.

One of the issues raised in defendant's Rule 29/33 motion and on appeal was that the government's rebuttal summation deprived him of a fair trial due to statements that allegedly (1) mischaracterized the evidence, (2) reflected the prosecutor's personal beliefs about defense counsel, and (3) denigrated the defense expert. The Second Circuit rejected this claim holding that "[u]pon careful review of the record as a whole, we find most of the comments were permissible arguments about the merits of defendant's theory of the case or made in response to defense counsel's own summation comments, which impugned the integrity of the government's case" and "none of the statements were so egregious that, even when taken cumulatively, they could have undermined the fairness of the trial." *United States v. Sheehan*, 838 F.3d 109, 128 (2d Cir. 2016). To the extent the comments were permissible argument, the failure to object does not fall "below an objective standard of reasonableness." To the extent they did not undermine the fairness of the trial, there is no prejudice.

6. Defendant's Decision Not to Testify

The final claim to be addressed is that trial counsel "barred [defendant] from discussing Media lies while on the stand to the point [defendant] did not take the stand at all." (DE 75 at 15.) Putting aside the issue of whether such testimony would have been appropriate, the Court rejects this claim as unfounded.

During the trial, counsel put on the record, outside the presence of the jury, the following regarding defendant's decision not to testify:

> It is Mr. Sheehan's decision not to testify, and I want to put on the record the reasons behind that given the serious nature of the offense . . . . I explained to Mr. Sheehan the following in terms of advice:
> As I stated in my opening, he had a technical defense to count two. Based on the cross-examination of the government witnesses, and the testimony of the defense expert, in my opinion I have put sufficient evidence before the jury in terms of a technical . . . defense to the allegation in count two, whether this in fact was a destructive device.
> In my opinion if Mr. Sheehan were to take the stand, he would have nothing to add to this technical defense. The only piece of evidence that he could add that would be of a material nature would be that the igniter inside the pipe was separated.
> But we already have that from his note to Home Depot, in terms of being evidence.
> If he were to . . . get on the witness stand and testify to that, he would simply be reiterating what is already in evidence.
> We also have additional evidence from both experts that there was no evidence of any igniter, meaning perhaps there was one and perhaps there was not.
> . . .
> [I]f Mr. Sheehan testifies on direct, Ms Gatz will have a lot to go through with him on cross-examination. In my opinion she would . . . put all these damaging pieces of evidence in front of Mr. Sheehan, the notes about roofing nails, broken pipe, the actual explosion in the shed, and this would resonate with the jury after all these bad things, they would just keep hearing the bad acts. And then Ms. Gatz would be able to ask Mr. Sheehan, when you . . . demanded a million dollars, did you think it was because you were a good employee?
> Obviously the answer would be no.
> And follow along the lines, you wanted to scare then, didn't you? You wanted then to be scared so much that they would part with a million dollars.
> When the jury hears this, in my opinion the potential inflammatory nature of this - - again, it survives 403, and it would resonate with the jury. And it

would not be in any way relevant to the defense, yet it would be damaging in terms of the visceral reaction in terms of what Mr. Sheehan did.

So in my opinion, the positive of him testifying is far outweighed by not only the potential negative but the almost guaranteed that would come out with the cross.

I did a mock cross. . . .[B]ased upon that overall favorable opinion of what I have done so far in this case, he has respected my advice that he not testify.

I told him, of course, that he has an absolute right to testify in his own defense. And if he wants to testify over my objection, he would be allowed to do no.

He said, no, I would accept your advice.

(Tr. at 569-72.) After being placed under oath, defendant confirmed to the Court that (1) he heard what counsel said regarding the information he imparted regarding his evaluation of the pros and cons of taking the stand and it was accurate; (2) he understood that he had the right to testify at trial and that the final decision was his; (3) that he elected not to testify and no one forced or threatened him to make that decision. (Id. at 572-74.)

7. <u>Summary Regarding Trial Counsel's Performance</u>

Having presided over the trial of this matter and having considered all of Defendant's claims both individually and cumulatively, the Court concludes that Sheehan has not demonstrated that trial counsel's "performance was so deficient that, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance," Gonzalez, 722 F3d at 130, or that there is a reasonable probability that the result would have been different but for counsel's purported shortcomings. The evidence against Sheehan as to each count of conviction was overwhelming.

**D.     Claims Regarding Appellate Counsel**

The three asserted bases regarding the performance of appellate counsel[3] will be addressed ad seriatim.

---

[3] Sheehan was represented by a different court appointed attorney at his sentencing.

1. Failure to Argue 3 Point Reduction

The first asserted error is that counsel failed to argue for a 3 point reduction under §2X1.1 of the U.S. Sentencing Guidelines as his crime was attempted extortion not extortion. Assuming arguendo the applicability of the referenced section, Sheehan cannot demonstrate prejudice given the sentence imposed.

Defendant's total offense level for Count One was 25 and his criminal history was category 1, resulting in a guideline range of 57-71 months. A three point reduction in the total offense level would have resulted in a guideline range of 41-51 months. As to Count One, the Court imposed a sentence of only one month (i.e. a sentence below the now argued correct guideline range) to run consecutively to the 30 year statutorily mandated minimum on Count Two. Even if the guideline range was, as defendant maintains, 41-51 months, the Court would not have imposed a different sentence on Count One.

2. Failure to Email/Take Telephone Calls

Sheehan asserts that counsel was ineffective because he would not email him, blocked his calls and only visited him once. In a letter to the Court filed on September 8, 2014, he wrote, in pertinent part, that his new counsel "suffers from Parkinson's and has recently suffered an injured arm from a fall. He told me via e-mail that it is too difficult to type e-mail to me . . . . I cannot afford the twenty seven cents a minute to call him." (DE52-1). This letter casts doubt on the defendant's current characterization of counsel's actions. Even assuming, there was a failure to communicate, Sheehan identifies no resulting prejudice. He does not explain how his alleged lack of input undermines the confidence in the outcome of either his sentencing or the appeal.

### 3. Use of Co-counsel

The last assertion is that counsel farmed him out to co-counsel without consulting him and that co-counsel never met him or discussed the appeals strategy, waived oral argument, and referred to him as delusional on appeal. (DE 75 at 15-19.) Firstly, the Court notes that there was a motion for the appointment of co-counsel, which motion stated that "it is anticipated that [co-counsel] will file the notice of appeal and prosecute the appeal on Mr. Sheehan's behalf." (DE 62.) That motion was granted on the record at a February 6, 2015 conference at which time defendant was present. In other words, defendant was fully aware of the appointment. (*See* DE 67; *see also* Letter to Clerk of U.S. Court of Appeals dated October 25, 2015 and filed on the Second Circuit docket in Sheehan's appeal at DE 46-1 (referring to co-counsel as his attorney) As to the remaining allegation there has been no showing of prejudice.[4]

### E. The Johnson Claim

The final basis for the relief sought is the assertion that the Supreme Court ruling in *Johnson v. United States*, 135 S. Ct. 2551 (2015) "eliminates attempted extortion as a violent crime worthy of supporting a 924c as a predicate offense." (DE 75 19-21.) However, the issue is not adequately addressed in the parties' submission. Accordingly, this claim will be held in abeyance pending appointment of counsel for defendant and the receipt of further briefing by both parties. A separate order regarding such shall be entered.

---

[4] Sheehan asserts that the prejudice is that he lost but that in and of itself is insufficient.

## IV. CONCLUSION

Defendant's motion for relief pursuant to 28 U.S.C. § 2255 is denied to the extent that it is based on ineffective assistance of counsel. The *Johnson* issue is held in abeyance pending further briefing.

**SO ORDERED.**

Dated: Central Islip, New York  
      April 16, 2018

                                          s/ Denis R. Hurley  
                                         United States District Judge